UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MERITA GIBSON, | ) |
| Plaintiff, | ) Civil Action No._____ |
| v. | ) |
| | ) **Jury Trial Demanded** |
| R.R. DONNELLEY & SONS CO., | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff Merita Gibson ("Plaintiff" or "Ms. Gibson") files this Complaint against Defendant R.R. Donnelley & Sons Co. ("Defendant" or "RRD"), for violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*[1] In support thereof, she offers the following:

## PARTIES

1. Ms. Gibson is a citizen of the United States. She submits herself to the jurisdiction of this Court.

2. Defendant is a private corporation registered to do business in the State of Georgia and has the capacity to be sued.

3. At all relevant times, Defendant was Ms. Gibson's employer.

---

[1] Plaintiff anticipates amending this Complaint to include additional claims, including under the Pregnancy Discrimination Act and Pregnant Workers Fairness Act, once she has exhausted her administrative remedies as to those claims.

Page **1** of **12**

4. At all relevant times, Defendant employed more than fifteen employees.

5. Defendant can be served with process by service upon its registered agent, located at 289 S Culver Street in Lawrenceville, Georgia, 30046.

## JURISDICTION AND VENUE

6. This Court has original, federal-question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

7. The acts and omissions giving rise to Plaintiff's claims, including the work she performed for Defendant and relevant communications with Defendant, occurred within this district and division. This Court therefore has personal jurisdiction over Defendant, and venue is proper in this Court.

## ADMINISTRATIVE EXHAUSTION

8. On or around July 15, 2025, Ms. Gibson timely filed with the EEOC a signed charge alleging discrimination by Defendant because of disability in violation of the ADA, among other things.

9. On July 25, 2025, the EEOC issued Ms. Gibson a notice of right to sue. She now timely files this Complaint.

## FACTS

10. In or around 2016, Ms. Gibson was diagnosed with chronic anemia. Among other things, this condition episodically causes her fatigue and other

symptoms. During a flare-up, Ms. Gibson's condition substantially impairs her ability to perform various major life activities, including but not limited to making it unsafe for her to operate heavy machinery such as by driving a car.

11. The treatment she has been receiving for her chronic anemia includes a regimen of intravenous infusions when her anemia flares up, after which she is safe to resume driving and other activities as normal. The infusion regimen typically occurs over a period of a few weeks.

12. Ms. Gibson began her employment with Defendant in February of 2019 as a contractor, moving into full-time employment with Defendant in April of 2019.

13. Throughout her employment with Defendant, Ms. Gibson's job title was Traffic Coordinator for Content and Creative Services.

14. Defendant's business involves the design, production, and printing of advertisements for large corporate clients, and Ms. Gibson's primary duties as a Traffic Coordinator involved liaising between Defendant's project management team and creative team.

15. In 2020, because of the COVID pandemic, Ms. Gibson transitioned to fully remote work, as did most if not all of Defendant's employees with whom Ms. Gibson regularly interacted as part of her job.

16. Ms. Gibson, along with most if not all of Defendant's employees with whom she regularly interacted as part of her job, continued working fully remotely into 2024.

17. In September of 2024, Ms. Gibson went on maternity leave, scheduled to return to work at the beginning of January 2025, which she did.

18. On or around March 7, 2025, Defendant notified Ms. Gibson of its intent to return her to in-person work, beginning in early June of 2025.

19. Ms. Gibson's job was not client-facing, and of the approximately twenty (20) people on her team who were not client-facing, she was the only one ordered to return to in-person work.

20. In or around May of 2025, Ms. Gibson's chronic anemia flared up. She began another regimen of infusions in June of 2025.

21. Ms. Gibson's recent pregnancy had been complicated, and her anemia flare-ups had become more frequent and more severe afterwards.

22. For this reason, in addition to the infusions, Ms. Gibson's doctor prescribed the installation of a medical device, in July of 2025, to reduce the frequency and severity of Ms. Gibson's anemia flare-ups in the future.

23. In the meantime, because of her May 2025 flare-up, Ms. Gibson's doctor recommended that she stop driving until she had completed her infusion treatment in August 2025, including that she not drive to work.

24. In an email dated May 29, 2025, Ms. Gibson formally requested that Defendant allow her temporarily to continue working remotely, until her infusion treatment completed at the end of August 2025. Attached to this email, she included her doctor's recommendation for same.

25. In a letter dated June 30, 2025, Defendant denied this request.

26. Specifically, in the June 30 letter, Defendant misrepresented Ms. Gibson's request temporarily to continue working from home as a request that Defendant transport her to and from work. Defendant then asserted that it has no obligation to provide such accommodations because "transportation" is not "related to" Ms. Gibson's performance of her essential job functions.

27. Ms. Gibson did not request that Defendant transport her to and from work. She requested that she be allowed, temporarily, to continue working remotely as she had continuously for the previous five years.

28. On-site presence was not an essential function of Ms. Gibson's job.

29. Defendant has never alleged that on-site presence is or was, at any relevant time, an essential function of Ms. Gibson's job.

30. Defendant has never alleged that granting Ms. Gibson the accommodation she requested—or any other accommodation Defendant may have considered in the alternative—would have been an undue hardship.

31. In the June 30 letter, Defendant instructed Ms. Gibson to report to work in-person at least four days per week beginning the week of July 7, 2025.

32. The next day, July 1, 2025, Ms. Gibson responded, requesting an appeal of Defendant's decision.

33. On July 3, 2025, Defendant denied Ms. Gibson's request.

34. Ms. Gibson did not report to work in-person the week of July 7, 2025, because, among other reasons, driving herself to work would have endangered her and everyone else on the road, and paying for a taxi or rideshare service during rush hour twice per day, four days per week, would have been prohibitively expensive.

35. On July 8, 2025, Ms. Gibson emailed Defendant's Vice President of Human Resources and Chief Administration Officer, asking them to review the decision as well.

36. Shortly thereafter, Defendant's Chief Administration Officer terminated Ms. Gibson's employment. The Vice President of Human Resources never responded.

37. The official Department of Labor Separation Notice Defendant prepared identifies July 14, 2025, as Ms. Gibson's last day of work. It does not allege a reason for her termination.

38. After completing the infusion regimen that began in June 2025, Ms. Gibson's symptoms subsided, and she resumed driving on or around September 1,

2025, exactly as anticipated and expressed to Defendant in her accommodation request paperwork.

39. Defendant had no legitimate non-discriminatory reason for terminating Ms. Gibson's employment.

40. Defendant terminated Ms. Gibson's employment because of her need or perceived need for temporary accommodations.

41. Defendant would not have terminated Ms. Gibson's employment but for her need or perceived need for temporary accommodations.

42. Defendant's termination of Ms. Gibson's employment was done maliciously and with reckless indifference to her rights under federal law, including under the ADA.

43. Defendant's discriminatory termination of Ms. Gibson's employment has caused her substantial emotional distress.

## Claims

### Count I – Disability Discrimination in Violation of the ADA

44. Title I of the ADA prohibits covered entities from discriminating against qualifying employees with respect to any "term, condition, or privilege of employment." 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4(a)(ix).

45. At all relevant times, Defendant was a "covered entity" for the purposes of Title I of the ADA, as set forth in more detail above. 42 U.S.C. §§ 12111(2); 12111(5).

46. Ms. Gibson's employment history, as set forth above, demonstrates her ability to perform the essential functions of her employment position with and without reasonable accommodation, and she is therefore a "qualified individual" for the purposes of Title I of the ADA. 42 U.S.C. § 12111(8).

47. In the period preceding the termination of her employment and when she was terminated, Ms. Gibson suffered from a temporary "disability" within the meaning of the ADA, as defined at 42 U.S.C. § 12102, in that her anemia flare-up impaired her in numerous major life activities, including but not limited to driving.

48. Defendant intentionally discriminated against Ms. Gibson with respect to the terms, conditions, and privileges of her employment, in violation of the ADA, by terminating her employment because of her need or perceived need for an accommodation for her disability.

49. Defendant's conduct described herein was malicious and done with reckless disregard for Ms. Gibson's rights, motivated by discriminatory animus and, among other things, a desire to avoid encouraging other employees to seek accommodations—such as temporary work-from-home accommodations—for their own covered disabilities.

50. Defendant is therefore liable to Ms. Gibson for disability discrimination in violation of the ADA. Specifically, for its illegal conduct, Defendant is liable to Ms. Gibson for both prospective relief and damages including lost wages and benefits, compensatory damages, punitive damages, attorneys' fees, and other costs of litigation.

### Count II – Failure to Accommodate in Violation of the ADA

51. One particular form of discrimination prohibited under the ADA is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

52. As an accommodation for her disability, Ms. Gibson requested a temporary work-from-home accommodation.

53. Allowing Ms. Gibson to continue working from home temporarily would have been a reasonable accommodation, considering, among the other evidence summarized above, that she had done so without serious issue for the vast majority of her employment with Defendant.

54. Alternatively, to whatever extent Defendant understood Ms. Gibson's temporary work-from-home request to be a request that Defendant provide her transportation to and from the office, that accommodation also would have been

reasonable, considering, among other things, it would have enabled her to comply with Defendant's apparent preference for in-office work.

55. Denying Ms. Gibson's request—and the other accommodations, if any, Defendant considered in the alternative—and thereby requiring her to drive herself or hire someone to drive her to work in-office during her treatment, would have caused her significant physical danger and/or financial hardship not required of other employees in her or similar positions.

56. Granting Ms. Gibson's request—or the other accommodations, if any, Defendant considered in the alternative—would not have required Defendant to undertake significant difficulty or expense, financially, operationally, or otherwise, and so would not have imposed on Defendant an "undue hardship," as that term is defined in 42 U.S.C. § 12111(10).

57. Defendant's failure to provide Ms. Gibson the accommodation she requested was not due to any failure on her part to engage in good-faith discussions regarding her disability and related needs.

58. To the extent Defendant's failure to provide Ms. Gibson any accommodation was due to a miscommunication, the fault for that miscommunication lies with Defendant, who refused to discuss its decision letter of June 30, 2025, despite Ms. Gibson's multiple requests for further discussion.

59. Defendant discriminated against Ms. Gibson, in violation of the ADA, by failing to provide her with the reasonable accommodation she requested.

60. Defendant's conduct described herein was malicious and done with reckless disregard for Ms. Gibson's rights.

61. Defendant is therefore liable to Ms. Gibson for disability discrimination in violation of the ADA. Specifically, for its illegal conduct, Defendant is liable to Ms. Gibson for both prospective relief and damages including lost wages and benefits, compensatory damages, punitive damages, attorneys' fees, and other costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

a. for a trial by jury;

b. for a declaratory judgment that Defendant's acts complained of herein were in violation of the ADA;

c. for an award of all lost wages to Plaintiff;

d. for an award of an amount equal to all lost benefits to Plaintiff;

e. for an award of compensatory damages to Plaintiff;

f. for an award of punitive damages to Plaintiff;

g. for an award of prejudgment and post-judgment interest;

h.  for an award of costs and expenses of this action, including reasonable attorneys' fees, expert fees, and costs; and

i.  for any further and additional legal and equitable relief as the Court deems just and proper.

Respectfully submitted this October 22, 2025.

*/s/Jake Knanishu*
James Radford
Georgia Bar No. 108007
Jake Knanishu
Georgia Bar No. 597103
Radford Scott LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jradford@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiff*